UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIA E. GARCIA,<br><br>                    Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 2:16-cv-00714-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On November 8, 2012, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning August 1, 2006. Dkt. 9, Administrative Record (AR) 17. Both applications were denied on initial administrative review and on reconsideration. *Id.*

A hearing was held before an Administrative Law Judge (ALJ), at which plaintiff appeared and testified, as did a vocational expert. AR 46-108. In a written decision dated October 21, 2014, the ALJ found that plaintiff could perform other jobs existing in significant

ORDER - 1

numbers in the national economy and therefore that she was not disabled. AR 17-38. On March 17, 2016, the Appeals Council denied plaintiff's request for review of that decision, making it the Commissioner's final decision, which plaintiff then appealed in a complaint filed with this Court on May 19, 2016. AR 1; Dkt. 1-3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1) in evaluating the opinion evidence from Christopher Noell, M.D., and Carl Epp, Ph.D.;

(2) in finding plaintiff to be not fully credible; and

(3) in assessing plaintiff's residual functional capacity (RFC); and

(4) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore finds the decision to deny benefits should be affirmed.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.  The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

ORDER - 3

stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

ORDER - 4

A.  Dr. Noell

With regard to the medical opinion evidence from Dr. Noell, the ALJ found:

> In his [November 2011] consultative evaluation of the claimant, Dr. Noell opined that the claimant is not presently able to work because of the psychiatric symptoms of "foreboding leading to indecision, fear of being alone and/or insomnia.., suicidal preoccupation, fear-motivated behavior causing moderate interference with daily life... inability to work with others or adapt.., deviations in social behavior which cause concern to others." He further opined that the claimant's prognosis for return to work is guarded, and assessed the claimant's [global assessment of functioning (GAF)] score of 45,[1] suggesting serious symptoms or serious impairment in social, occupational, or school functioning. The undersigned gives little weight to this opinion because it was formed at a time when there is no evidence that the claimant was receiving any treatment for her mental symptoms. As noted above, the claimant admitted that she was yet to follow through with the recommended treatment plan. Other records show that her cognitive and social functioning capacities are not as limited as opined by Dr. Noell after treatment.

AR 36 (internal citations omitted). Plaintiff argues the reasons the ALJ provided for giving little weight to Dr. Noell's opinion are not valid. The Court disagrees.

While the Court does agree that the mere fact that plaintiff was not receiving treatment at the time Dr. Noell offered his opinion – and that a mental status examination is only a snapshot of her ability at that time – are not alone sufficient reasons to discount Dr. Noell's opinion, as the ALJ went on to note, the medical evidence in the record shows plaintiff's condition improved after treatment. *See* AR 1009-1056, 1133-40, 1145-56, 1159-62, 1173-76. Plaintiff argues the ALJ erred by not offering any discussion or examples to support this conclusion. Earlier in the decision, however, the ALJ did provide a detailed summary and analysis of that evidence. *See*

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of the individual's overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 32); *see also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Pisciotta*, 500 F.3d at 1076 n.1 ( (quoting DSM-IV-TR at 34).

ORDER - 5

AR 32. Further, as noted above, the ALJ may support his decision "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," and the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Reddick*, 157 F.3d at 725; *Magallanes*, 881 F.2d at 755; *Sample*, 694 F.2d at 642. Overall, therefore, the ALJ did not err here.

    B.    Dr. Epp

The ALJ also gave "little weight" to the opinion evidence from Dr. Epp, finding:

> . . . In his evaluation of the claimant . . . , Dr. Epp opined that the claimant is markedly limited in his abilities to understand, remember and following [sic] simple and complex instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, and to complete a normal workday or workweek without interruptions from psychologically based symptoms. He further opined that the claimant's prognosis for return to work is guarded, and assessed the claimant's [GAF] score of 45, suggesting serious symptoms or serious impairment in social, occupational, or school functioning. The undersigned gives little weight to Dr. Epp's opinion because it was formed at a time when the claimant just began to comply with her mental health treatment plan. This opinion also contrasts sharply with some contemporary observations of the claimant. Moreover, the claimant's performance at the April 2013 mental status examination is only a snapshot of the claimant's ability in a single independent examination, which does not provide a detailed, longitudinal picture of the claimant's mental impairments. Other records show that her symptoms and limitations continue to improve with better compliance, as discussed in detail above.

AR 36 (internal citations omitted). Plaintiff argues these reasons for rejecting Dr. Epp's opinion too are not legitimate. Once more the Court disagrees.

As explained in regard to Dr. Noell, the mere fact that Dr. Epp formed his opinion at a time when plaintiff just began to comply with treatment and that the mental status examination Dr. Epp performed is only a snapshot of plaintiff's mental health condition, are not themselves a sufficient basis to reject that opinion. Also as discussed above, however, the record supports the ALJ in finding plaintiff's condition improved with treatment, and thus this was a valid basis for

ORDER - 6

giving less weight to Dr. Epp's opinion as well. Likewise, the ALJ's discussion and analysis of that evidence earlier in his decision – also as noted in the previous section – defeats plaintiff's further assertion that the ALJ failed to set out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings. Accordingly, here too the ALJ did not err in evaluating the medical opinion evidence.

II.   The ALJ's Credibility Determination

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

ORDER - 7

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

The ALJ discounted plaintiff's credibility in part because:

> The record . . . contains evidence that suggests the claimant's current lack of employment might not be related to medical impairments but to other factors. The claimant's work history report and earnings record show a poor work history. On her work history reports, the claimant listed nine different jobs that she held in the past years. Neither one of these jobs lasted for more than six months. . . . The claimant's relatively truncated work history does not add significant probative weight to her allegations concerning [her] ability to sustain regular and continuing work.

AR 28 (internal citations omitted). A poor work history can negatively affect a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff argues it is not unusual for someone her age – 23 at the time she alleged she first became unable to work – to have a poor work history. But she offers no evidence that this is actually true for most or many persons that age. Further, even if it is true for some persons that age, it is equally reasonable to assume an equal number of others are working, particularly if they are not in school as is the case with plaintiff. Plaintiff goes on to argue that when she tried to return to work in 2011, she was not able to maintain employment because of her impairments. But as the ALJ points out, she apparently had nine different jobs in six months, and no showing has been made that all of those jobs ended because of an inability to do them. *See, e.g.,* AR 59-60.

The ALJ also discounted plaintiff's credibility in part for the following reason:

> There is evidence that the claimant has misrepresented facts relevant to the issue of disability. At the hearing, the undersigned asked the claimant the last time she was paid for doing any work within the last two years. The claimant

ORDER - 8

>initially responded that she had not. However, after the undersigned went over her earnings record, as discussed in details above, she admitted to working part-time at Creek[side Retirement Community] but said she stopped going to work in the beginning of 2012. The claimant tried to explain that she was nervous. However, the undersigned finds that she is not to be [sic] credible. The claimant was able to immediately talk about the jobs when faced with the information.

AR 28 (internal citations omitted); *see also* AR 59. Plaintiff argues the ALJ did not use the word "work" in questioning her, and asserts this instead was "one of [his] 'gotcha' questions." Dkt. 14, p. 16. It is true that the ALJ did not specifically use the word "work" in questioning plaintiff, but the hearing transcript does reveal the following occurred:

>Q    When is the last time that you got paid for anything that you have done for anyone? It doesn't have to be a full-time job. It could be a one-time thing. Family, friends give you some money for picking something up or doing whatever for them. So, within the last two years, when is the last time that you got paid for anything that you have done for somebody?
>A    Your Honor, I do not get -- I don't have no income coming in. I don't have relatives that pay for any.
>Q    All right. My only question is when is the last time. Now, the last time you may say within the last two years nothing, but so is that what you're saying within the last two years --
>A    Yes.
>Q    -- you've gotten paid by no one for doing anything for them, is that correct?
>A    Yes. That's correct.
>Q    Okay. What about the last time, again within the last two years, that you may have done a favor for someone that you didn't get paid, but just a favor, or you did it and it's paying for something, but you didn't get money? When is the last time that you may have done a favor for services? In exchange for services?
>A    It's been over two years. I don't --
>Q    Within the last three years. It's been what now?
>A    I don't do any of that. I just -- I don't.
>Q    Okay. So, you're saying that nothing within the last three years?
>A    Yes.

AR 57-58. It thus is quite clear the ALJ was talking about work, or at the very least performing tasks for money or other remuneration, i.e., "work". Indeed, the ALJ even used the word "job".

ORDER - 9

Nor does the Court find anything in the ALJ's questioning reveal or suggest that he was trying to catch plaintiff in a lie or some other statement adverse to her disability claim. Accordingly, here too the ALJ did not err.

> The ALJ next found plaintiff to be not fully credible because:
>
> [T]he record indicates that the claimant stopped working for reasons not related to the allegedly disabling impairments, but due to other factors. At the hearing, the claimant said she left the Creekside waitress job because she decided to leave to find another job and not because she was fired. She testified that she then left her next job because she could not lift as much as her employer required. Yet, she admitted that her employer had informed her how much she needed to lift prior to offering her a job. To a certain degree, it appears as though the claimant left some of her jobs due to economic or other reasons rather than because of the allegedly disabling impairments. At the hearing, the claimant stated that her left ankle limited her from work for more than 25 minutes at a time, which affected her work in 2011 and 2012. However, she did not state that her left ankle [sic] as a reason that she left that job when asked earlier. Moreover, while she says she has a prescription for the ankle brace, the claimant testified that she most recently got it in April 2014. Inconsistencies raise a significant credibility concern. The fact that the claimant provided inaccurate information on matters so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable. Such evidence casts significant doubt on the extent to which the claimant has actually been limited by symptoms and puts [her] general veracity into question.

AR 28. Plaintiff argues she left the waitress job after three months, and therefore it is unknown whether she could perform it long enough to constitute substantial gainful activity. As defendant points out, however, the ALJ relied on this evidence not to show she could continue to perform that job at the substantial gainful activity level, but that it calls into question her allegation that she is limited by her symptoms and impairments to the extent alleged. The Court further finds the ALJ did not err in noting the other inconsistencies in plaintiff's testimony concerning her prior jobs, although the Court does agree the ALJ erred in relying on the evidence of her getting an ankle brace in 2014, as the record indicates this was a new brace and plaintiff had been using an ankle brace since at least 2009. *See* AR 89-90, 449.

ORDER - 10

The ALJ also discounted plaintiff's credibility for the following reason:

> The record also shows that the claimant was less than fully cooperative or put forth less than maximal effort during examinations. In January 2013, Dr. [Elga] Kinnear noted that the claimant performed poorly in the mental status examination but stated that she did not appear to put forth significant effort throughout the questions. Similarly, in February 2013, Dr. [John] Gilbert noted that the claimant did not put forth full effort at [sic] mental status examination and declined to attempt serial 3's and 7's.

AR 28-29 (internal citations omitted). Plaintiff argues Dr. Kinnear nevertheless opined that she "may likely be able to return to work if her depression and anxiety are adequately managed." AR 948. First, plaintiff has not specifically challenged the ALJ's rejection of that opinion. *See* AR 34-35. Second, the fact that a claimant is expressly noted by a medical source to have given less than full effort, as in this case, is a reasonable basis upon which to discount the claimant's claims of disabling limitations. Nor was it error for the ALJ to rely on Dr. Gilbert's comment, which merely reflected Dr. Kinnear's findings. Plaintiff asserts that comment does not relate to any particular psychological evaluation, but it is clear Dr. Gilbert was referring to Dr. Kinnear's. *See* AR 134, 139, 948.

Another reason the ALJ gave for discounting plaintiff's credibility is that "[t]he objective findings and independent testing do not support that [plaintiff] is as limited physically as alleged. AR 29; *see also* AR 30. A finding that a claimant's complaints are inconsistent with the medical evidence in the record can satisfy the clear and convincing requirement. *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the ALJ engaged in "cherry picking" the evidence to support his finding. Dkt. 14, p. 17. The examples plaintiff points to, though, do not demonstrate that the ALJ was incorrect in finding her alleged physical limitations are inconsistent with the objective medical evidence. *See id.* Nor does plaintiff argue the ALJ erred in rejecting those portions of the medical evidence that indicate greater limitations

ORDER - 11

than the ALJ himself found. *See* AR 33-34.

Next, the ALJ found plaintiff to be not entirely credible because the record shows her "mental symptoms are generally not severe as alleged," and that they improved with treatment. AR 30-31. The ALJ may discount a claimant's credibility on the basis of medical improvement. *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Plaintiff argues the ALJ again is cherry picking the evidence here. But as discussed above, the medical evidence shows plaintiff's condition improved with treatment. Thus, this was a proper basis for discounting her credibility as well.

The ALJ also found there was evidence in the record that plaintiff "has not been entirely compliant in her treatment plan, which further suggests that that [sic] her symptoms has [sic] not been as limiting as she has alleged." AR 32. Failure to follow a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff contests this basis for finding her not liable, arguing the ALJ did not find she would improve to the extent she would be employable had she complied with treatment. But as discussed above, the ALJ did point to evidence of improvement when she was compliant, and there is no requirement that the ALJ necessarily find treatment would result in actual employability to use such improvement as a basis for discounting plaintiff's credibility. Plaintiff also asserts the ALJ did not cite to any care provider opining that she was engaged in malingering or other factitious behavior. Again as discussed above, though, Dr. Kinnear noted evidence of giving less than full effort. Further, a finding of malingering or factitious behavior is a separate and distinct basis for discounting credibility, and thus is not necessary in order to also discount credibility on the basis of noncompliance.

Lastly, plaintiff argues the ALJ erred in discounting her credibility on the basis of her

ORDER - 12

activities of daily living. AR 27-28. The Court agrees this was not a valid reason for doing so, as the record fails to show plaintiff engaged in such activities for a substantial part of the day or to an extent indicative of skills that are transferrable to a work setting, or that they otherwise contradict her testimony. AR 90-92, 333-39; 375-81, 391, 947; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 and n.7. Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility were improper, does not render the ALJ's credibility determination invalid, as it is supported by substantial evidence in the record for the other reasons noted above. *Tonapetyan*, 242 F.3d at 1148; *see also Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (while the ALJ relied on an improper reason for discounting the claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

III.    The ALJ's Assessment of Plaintiff's RFC

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

ORDER - 13

a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

In terms of plaintiff's RFC, the ALJ found she could have "**frequent contact with coworkers of 5 or less for work tasks but primary work tasks should not require collaborative efforts more than 15 minutes**," and that "**[t]here should be no contact with the public for work tasks but incidental contact is not precluded**." AR 25 (emphasis in the original). Plaintiff argues the ALJ erred in not also including in that RFC "the limitations of unscheduled absences from work, or being off task causing reduction in productivity 15 percent of the workday." Dkt. 14, p. 12. But plaintiff has not shown the evidence in the record supports such limitations or that the ALJ was required to adopt them, particularly given that plaintiff has failed to establish any error on the ALJ's part in evaluating the medical opinion evidence or in assessing plaintiff's credibility.

IV.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial

ORDER - 14

evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

At step five in this case, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 37. Plaintiff argues the ALJ erred by failing to include all of the functional limitations resulting from her mental impairments assessed by Dr. Noell and Dr. Epp, as well as additional limitations based on her testimony, in the hypothetical question he posed. As discussed above, though, the ALJ did not err in rejecting either medical source's opinion or in discounting plaintiff's credibility. Accordingly, the ALJ also did not err in determining plaintiff to be not disabled at this step.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 12th day of January, 2017.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15